# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:18-CR-223 |
| v. | (MARIANI, J.) |
| SHAWN CHRISTY, | (SAPORITO, M.J.) |
| Defendant. | |

## **MEMORANDUM**

This matter is before the court on a *pro se* motion for immediate release due to the COVID-19 pandemic (Doc. 262) filed by the defendant, Shawn Christy, a federal inmate at Lackawanna County Prison (LCP).[1]

Christy, who is currently awaiting sentencing, seeks his release from custody pending sentencing based on prison conditions at Lackawanna County Prison (LCP) and the inherent risk posed by his being confined in close quarters with a large number of other inmates during the COVID-19 global pandemic. Christy is allegedly immunocompromised due to multiple untreated medical issues. Further,

---

[1] The defendant was originally represented by the Office of the Federal Public Defender until he decided to represent himself. The court granted Christy's request to represent himself and appointed stand-by counsel to assist him in this case.

he requests relief to spend time with at-risk family members during the pandemic. Christy has filed a brief in support of his motion. (Doc. 275.) The government has filed a brief in opposition. (Doc. 264.) The matter is ripe for a decision.

## I. Statement of Facts

Over the course of an investigation, law enforcement determined that Christy had posted social media messages threatening to put a bullet in the head of President Donald J. Trump, threatening to kill the district attorney of Northampton County, John Morganelli, and threatening to use lethal force against any law enforcement officer who sought to apprehend him. Christy then absconded from state court criminal proceedings against him in Schuylkill and Northampton Counties. While on the lam, he went on a crime spree that included burglarizing and stealing three guns from his uncle's home in Luzerne County, breaking into and stealing vehicles from the Rohrer Bus Company and Hazleton Oil and Environmental Company, breaking into a school for the deaf and several other businesses in Pennsylvania, breaking into and stealing money from a church in Maryland, breaking into and stealing items from a residence in Kentucky, where he also left a note threatening to wage

war against the United States Marshals Service and other law enforcement, and transporting and possessing stolen firearms as a convicted felon and as a fugitive from Pennsylvania to other states. He was finally apprehended in a wooded area in Ohio in possession of one of the firearms he stole from his uncle's residence in Pennsylvania.

Against this factual backdrop, a federal grand jury charged Christy with: (1) one count of threatening the President of the United States, in violation of 18 U.S.C. § 871; (2) three counts of transmitting threatening communications, in violation of 18 U.S.C. § 875(c); (3) two counts of interstate transportation of stolen vehicles, in violation of 18 U.S.C. § 2312; (4) two counts of interstate transportation of stolen firearms, in violation of 18 U.S.C. § 922(i); (5) two counts of interstate transportation of a firearm while under indictment for a felony offense, in violation of 18 U.S.C. § 922(n);[2] one count of possession of a firearm by a fugitive from justice, in violation of 18 U.S.C. § 922(g)(2); and one count of possession

---

[2] The term "indictment" in this statute includes federal or state charges brought by criminal complaint or by the filing of an information. *See* 18 U.S.C. § 921(a)(14); *see also Sears v. United States*, No. 10-1215, 2011 WL 1642008, at *6 (W.D. Pa. May 2, 2011) (collecting cases).

of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[3] (Doc. 47).

On October 26, 2018, Christy appeared before the undersigned United States magistrate judge for an initial appearance and arraignment on the original indictment, and he pleaded not guilty. We conducted a detention hearing on that date and determined that the defendant be detained pending trial because the government proved by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. We also concluded that the government proved by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance for future proceedings. He has remained detained since that time.

---

[3] Federal charges were originally brought against Christy by criminal complaint on June 19, 2018. (Doc. 1). He was subsequently indicted by a federal grand jury on July 10, 2018, in a four-count indictment. (Doc. 6). The grand jury later returned an eleven-count superseding indictment against him on November 27, 2018. (Doc. 28). Finally, the grand jury returned a twelve-count second superseding indictment on December 11, 2018, on which Christy was ultimately tried before a jury. (Doc. 47).

On December 10, 2018, Christy appeared a second time before the undersigned for an arraignment on the first superseding indictment, and he once again pleaded not guilty. On December 14, 2018, Christy appeared a third time before the undersigned for an arraignment on the second superseding indictment, and he again pleaded not guilty.

On November 27, 2019, following a seven-day jury trial, Christy was convicted on all twelve counts of the second superseding indictment. A presentence report has been completed and disclosed to the parties. The government contends that Christy faces a maximum aggregate sentence of ninety years in prison with an applicable guideline range of 262 to 327 months in prison. Christy is currently scheduled for a sentencing hearing on June 17, 2020.

In his brief in support,[4] Christy alleges that he is immuno-compromised because: (1) he lost more than twenty pounds while he was previously incarcerated at Schuylkill County Prison: (2) he has a broken nose; (3) he has Addison's disease, a heart condition, and Lyme disease. He further maintains that he has not received proper medical care while

---

[4] We note that the defendant's *pro se* brief is handwritten and portions are difficult to read.

incarcerated at LCP. He also asserts that he submitted requests for medical treatment for flu-like symptoms, but he was neither examined nor treated by prison medical staff. He alleges that LCP does not provide hand sanitizer and he has been threatened by an LCP staff member for filing grievances.

Christy alleges that an inmate died at LCP because of a lack of medical care for that inmate's COVID-19 condition. The government disputes this allegation as a factual matter, noting that the United States Marshals Service has checked with prison officials, who have confirmed that, as of the date when Christy's motion was filed, no inmate had tested positive for or died as a result of COVID-19. We have also ruled on several similar motions for release based on COVID-19 over the past two months, and at no time has it been alleged by any other defendant that an inmate at LCP had died because of the novel coronavirus. Over the course of the past two months, only a single staff member has been diagnosed with COVID-19.

A substantial portion of Christy's handwritten brief also consists of unrelated complaints about the prison staff, the court, the FBI, and his treatment by several other individuals.

The government contends that Christy's motion fails to prove "exceptional reasons" to justify a temporary release. For the reasons discussed herein, we will deny Christy's motion.

## II. Discussion

### a. COVID-19 Global Pandemic

"COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). "We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents." *United States v. Harris*, ___ F. Supp. 3d ___, 2020 WL 1700469, at *1 (M.D. Pa. Apr. 8, 2020). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a statewide stay-at-home order, which is expected to continue in effect through at least June 4, 2020, for Lackawanna County, where the defendant is detained at LCP. Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to

hand-wash or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### *b. Conditions of LCP*

Christy alleges that an LCP staff member tested positive for COVID-19. He contends that LCP does not provide hand sanitizer, that he has not received medical care despite requests to prison officials, and that he has been threatened by an LCP staff member for filing grievances. He also alleges that an LCP inmate diagnosed with COVID-19 has died because of a lack of medical care.

The government proffered in its brief that LCP has reported no positive COVID-19 cases among its inmate populations and only one corrections officer who has tested positive. All inmates were informed of that positive test result and placed on lockdown. The government further denies that any inmate has been diagnosed with or died from COVID-19, and it contends that Christy's allegation to the contrary is simply false.

We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the

8

prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. *18 U.S.C. § 3145(c)—Release Pending Sentencing*

Christy does not specifically cite any provision of the Bail Reform

9

Act of 1984 under which he seeks release. We have liberally construed his *pro se* motion as one seeking release under 18 U.S.C. § 3145(c), based on the COVID-19 global pandemic.

Because Christy has been found guilty of a crime of violence, *see* 18 U.S.C. § 3142(f)(1)(A),[5] his detention in the first instance is governed by 18 U.S.C. § 3143(a)(2), which provides that such a pre-sentence defendant be detained unless:

> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a

---

[5] The three counts of communicating threats, in violation of 18 U.S.C. § 875(c), are clearly crimes of violence under the Bail Reform Act. *See* 18 U.S.C. § 3156(a)(4) (providing statutory definition for "crime of violence"); *United States v. Santoro*, 359 F. Supp. 3d 122, 126–28 (D. Me. 2019) (communicating a threat to injure another person is a crime of violence for detention purposes); *United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D.N.Y. 2013) (same). Upon examining the elements of the offense, we further find that the count of threatening the President, in violation of 18 U.S.C. § 871, is also a crime of violence under the Bail Reform Act. But for detention purposes, the balance of Christy's offenses of conviction are not crimes of violence. *See United States v. Bowers*, 432 F. 3d 518, 521–24 (3d Cir. 2005) (holding that possession of a firearm by a convicted felon is not a crime of violence for detention purposes).

danger to any other person or the community.

18 U.S.C. § 3143(a)(2); *see also* Fed. R. Crim. P. 46(c) (placing burden of proof on the defendant).

Christy has proffered no evidence to support a finding that there is a substantial likelihood that a motion for acquittal or new trial will be granted. Likewise, Christy has proffered no evidence that the government will be recommending no prison time, and in its brief in opposition, the government advises that Christy is subject to a lengthy prison term.[6] Consequently, Christy is not eligible for release under § 3143(a)(2).

We therefore construe Christy's motion as relying on § 3145(c), which provides that: "A person subject to detention pursuant to section 3143(a)(2) . . . , who meets the conditions of release set forth in section 3143(a)(1) . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C.

---

[6] The government does not explicitly state that it will not be recommending no sentence of imprisonment, but it notes that Christy faces a maximum sentence of ninety years in prison, and that his guideline sentencing range is 262 months (more than 21 years) to 327 months (more than 27 years) of imprisonment.

§ 3145(c); *see also United States v. Williams*, 903 F. Supp. 2d 292, 298–302 (M.D. Pa. 2012) (holding that a district court possesses discretion to consider a temporary release pending sentencing under § 3145(c)); *United States v. Ortiz*, No. 1:18-CR-00134, 2020 WL 1904478, at *3 (M.D. Pa. Apr. 17, 2020) (endorsing *Williams* in the context of COVID-19).

To qualify for temporary release pending sentencing under § 3145(c), a defendant must first satisfy the criteria set forth in § 3143(a)(1). That section provides that the person "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1); *see also* Fed. R. Crim. P. 46(c) (placing burden of proof on the defendant).

We originally ordered the defendant's detention on October 26, 2018, because: the weight of the evidence was strong; he was subject to a lengthy period of incarceration if convicted; his prior criminal history; his participation in criminal activity while on probation, parole, or supervision; his lack of stable employment; his prior failure to appear in court as ordered; his prior attempts to evade law enforcement; his prior violations of parole, probation, or supervised release; his history of non-

compliance with supervision and threats to his probation officer; his history of being a fugitive from justice, eluding authorities over a 90-day period, during which his flight took him to six states and over an international border to Canada; and his placement of members of law enforcement, his family, and the community at-large at risk of harm during his flight from justice.

We note that, having been convicted in the interim, the burden of proof has now shifted from the government to the defendant. *Compare* 18 U.S.C. § 3142(f) (imposing burden on government to prove dangerousness by clear and convincing evidence and flight risk by preponderance of the evidence) *with id.* § 3143(a)(1) *and* Fed. R. Crim. P. 46(c) (imposing burden on defendant to prove by clear and convincing evidence that he is not likely to flee or to pose a danger to other persons or the community). Now, after considering the information presented in the motion papers and based on the nature of the offenses of conviction, the length of the potential sentence to be imposed, the strong weight of evidence against the defendant, and his demonstrated history of flight and endangering others, we find that the defendant has failed to establish, by clear and convincing evidence, that there is any condition or combination of

conditions that will reasonably assure the court that he is not likely to flee or pose a danger to the safety of any other person or the community if released.

Based on the foregoing, we are not obligated to address the "exceptional reasons" factor in § 3145(c). *See Ortiz*, 2020 WL 1904478, at *5. Nevertheless, under the specific facts presented in this case, we find the health risks posed by the COVID-19 pandemic to this particular defendant do not constitute "exceptional reasons" justifying his temporary release from presentence detention.

In his supporting brief, Christy presents only speculative arguments that his confinement at LCP increases the health risks posed to him by COVID-19. Other than a single guard who appears to have had no contact with the movant, there have been no confirmed cases of COVID-19 at LCP. In addition, Christy failed to provide any medical documentation in support of his alleged adverse medical conditions. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all live, in-court proceedings through May 31, 2020, which

14

should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Any reason for Christy to assist his stand-by counsel in his defense is further diminished by the fact that the presentence report in this case has already been completed and apparently reviewed by the parties, and he is merely awaiting sentencing, which is set for June 17, 2020. Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention. Under all these circumstances, we are not inclined to release him at this crucial time in the progression of his case, just before his sentencing hearing.

In the absence of any evidence of a medically diagnosed health condition that would increase the risk to Christy posed by COVID-19, or any evidence that LCP is not providing—or is unable to provide— appropriate medical care, we are not persuaded that Christy should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering

15

BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). While the court remains understanding of Christy's subjective concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis*, No. 19-1604, 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Christy's continued incarceration would likely increase his risk of harm. However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we may entertain a renewed request for release if at some point in the future it becomes clear that there are compelling reasons to justify the defendant's

17

release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020)).

### *III. Conclusion*

For the reasons set forth above, Christy has failed to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released, and he has failed to establish exceptional reasons why his continued detention until sentencing is not appropriate. Therefore, his motion (Doc. 262) is denied.

An appropriate order follows.

> *s/Joseph F. Saporito, Jr.*
> JOSEPH F. SAPORITO, JR.
> U.S. Magistrate Judge

Dated: May 29, 2020