THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **3:18-CR-223** |
| v. | : | **(JUDGE MARIANI)** |
| | : | |
| SHAWN CHRISTY, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION
I. INTRODUCTION

Defendant Shawn Christy's Motion for a Judgment of Acquittal/Motion for New Trial

(Doc. 213) is pending before the Court.  Defendant filed the motion following a seven-day

trial which resulted in a guilty verdict on all twelve counts contained in the Second

Superseding Indictment (Doc. 47).  (Doc. 211.)   Specifically, on November 27, 2019, the

jury convicted Defendant of one count of threatening the President of the United States (18

U.S.C. § 871), three counts of transmitting threatening communication (18 U.S.C. § 875(c)),

two counts of interstate transportation of stolen vehicles (18 U.S.C. § 2312), two counts of

interstate transportation of stolen firearms (18 U.S.C. § 922(i)), two counts of interstate

transportation of a firearm while under an Information for a felony offense (18 U.S.C. §

922(n)), one count of being a fugitive in possession of a firearm (18 U.S.C. § 922(g)(2)), and

one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)).  (*Id.*)

The pro se motion, dated December 5, 2019, and docketed in this Court on

December 12, 2019, identifies three grounds for the Court to enter an acquittal and ten

grounds for granting a new trial.  (Doc. 213 at 1-2.)   The motion does not provide support

for the conclusory assertions, and Defendant did not file a supporting brief within the time

allowed for doing so.  By Order of January 17, 2020, the Court directed Defendant to file a

brief within twenty-one days of the date of the Order, directed the Government to file a

responsive brief no later than twenty-one days thereafter, and allowed Defendant an

additional fourteen days to file a reply brief.  (Doc. 216.)

On February 10, 2020, Defendant filed a document consisting of four sentences

which he titled "Defendant's Brief in Support of Motion for Judgment of Acquittal." (Doc. 229

at 2.)  Defendant again failed to provide support for the conclusory assertions contained in

his filing.  (*Id.*)

On the same day, Defendant also filed a "Motion for Production of Transcripts at

Government's Expense" (Doc. 229), requesting a transcript of his criminal trial.  Defendant's

motion asserted that the transcript was necessary as he was "preparing a sentencing

memorandum as well as arguments that he would like to present to the Court in a renewed

motion for judgment of acquittal." (*Id*.) The Court granted this motion (Doc. 248) and, on

April 20, 2020, the official trial transcript was filed of record (Docs. 267-273).

Prior to the official trial transcript being completed and filed, pursuant to this Court's

Order directing the Government to file a response within 21 days of the filing of a brief in

support of Defendant's Motion for a Judgment of Acquittal/Motion for a New Trial (*see* Doc.

216), the Government filed a response to Defendant's motion on March 5, 2020 (Doc. 252).

2

On June 5, 2020, Defendant's standby counsel informed the Court that he had hand-delivered a copy of the entire trial transcript to Defendant (Doc. 282).  On the same day, in order to afford Defendant "every benefit, and in light of Defendant's request for the trial transcript, in part to support arguments in support of his motion for judgment of acquittal/new trial," the Court allowed Defendant until June 19, 2020, to file a supplemental brief in support of his Motion for a Judgment of Acquittal/Motion for a New Trial and allowed the Government fourteen days to file a supplemental response.  (Doc. 283.)  On June 15, 2020, Defendant informed the Court that he declined to file a supplemental brief, stating that he had read the trial transcript in full and had "no more new information to add."  (Doc. 286 at 1.)

## II. ANALYSIS

### A.  <u>Motion for a Judgment of Acquittal</u>

Defendant moves for judgment of acquittal on the following grounds: 1) the matter of finding guilt for stolen items such as guns and vehicles has not been decided in state court; 2) Defendant was blocked from attendance at state court hearings; and 3) Defendant was denied access to important legal information by the FBI, United States Marshals Service, and Lackawanna County Prison.  (Doc. 213 at 1.)  Defendant also states that he renews his previous motion for acquittal.  (*Id.*)  In "Defendant's Brief in Support of Motion for Judgment of Acquittal," he alleges that "[t]he Government has destroyed/planted evidence, with every item of audio/video evidence altered or missing.  No FD-302s from the vehicle owners or

from DA John Morganelli, have been filed.  DA Morganelli stated to Newsweek that he was

not a victim." (Doc. 244 at 2.)

Federal Rule of Criminal Procedure 29 provides the following in pertinent part:

**(a) Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

. . . .

**(c) After Jury Verdict or Discharge.**

**(1) Time for a Motion.** A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

**(2) Ruling on the Motion.** If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

**(3) No Prior Motion Required.** A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Fed. R. Crim. P. 29(a) and (c).

In reviewing a Rule 29 post-verdict motion for judgment of acquittal,

a district court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir.2001). The court is required to "draw all reasonable inferences in favor of the jury's

verdict." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir.1996). Thus, a finding of insufficiency should "be confined to cases where the prosecution's failure is clear." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir.1984).

*United States v. Smith*, 294 F.3d 473, 476–77 (3d Cir. 2002).  The Third Circuit has long advised that, in considering a post-verdict judgment of acquittal, the court "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt."  *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)).  In *United States v. Tyler*, 956 F.3d 116, the Circuit Court elaborated on the well-recognized standard:

> This review is "highly deferential" to the factual findings of the jury, and we "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration and omission in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)).

> > Thus, even if the evidence adduced is consistent with multiple possibilities, our role as a reviewing court is to uphold the jury verdict ... as long as it passes the bare rationality test. Reversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges, which is that [t]he evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. It is up to the jury—not the district court judge or our Court—to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld.

> *Id.* at 433 (alteration in original) (internal quotation marks and citation omitted).

*Tyler*, 956 F.3d at 122–23.

Here, Defendant's assertions in support of his Motion for a Judgment of Acquittal do not specifically address the sufficiency of the evidence. (*See* Doc. 213 at 1.) However, the Court will consider whether his single-sentence, bare-bones statements present a basis to grant his motion.

### 1. State Court Adjudication

With the statement regarding lack of state court findings of guilt for stolen items such as guns and vehicles (Doc. 213 at 1), Defendant does not directly challenge the sufficiency of his convictions on the federal charges related to stolen guns and vehicles, nor does he present any argument as to either the necessity or relevance of state court findings on the theft of the guns and vehicles.  In Counts 5 and 6 of the Second Superseding Indictment, Defendant was charged with Interstate Transportation of a Stolen Vehicle in violation of 18 U.S.C. § 2312.  (Doc. 47 at 5-6.)  In Counts 7 and 8, he was charged with Interstate Transportation of a Stolen Firearm in violation of 18 U.S.C. § 922(i).

18 U.S.C. § 2312 provides as follows: "Whoever transports in interstate or foreign commerce a motor vehicle, vessel, or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both."  As explained in the Court's charge to the jury, the Government had to prove beyond a reasonable doubt that the vehicle was stolen, Defendant transported the vehicle or caused the vehicle to be transported in interstate commerce, and Defendant knew that the vehicle was stolen when it

was transported in interstate commerce.  (Doc. 273 at 22:23-24:4.)  The Court also

instructed the jury that "[a] vehicle is stolen if it was taken wrongfully or dishonestly, with

intent to deprive the owner, either permanently or temporarily, of the rights and benefits of

ownership."  (*Id.* at 23:5-8.)

      Given the elements of the offense, clearly no state court finding of guilt is needed to

find a defendant guilty of a violation of 18 U.S.C. § 2312.  If Defendant is suggesting that

that the Government did not present sufficient evidence that Defendant stole the vehicles, a

review of the transcript shows otherwise.  For example, the Government's summary of

evidence on these counts included video evidence of Defendant wrongfully taking the

vehicles at issue which he did not own.  (Doc. 272 at 105:4-106:19.)  Further, although

Defendant did not raise an issue of state court findings regarding stolen vehicles in his

Motion for a Judgment of Acquittal made at the close of the presentation of evidence (*see*

Doc. 272 at 82:17-83:5), the Government reviewed the elements of the 18 U.S.C. § 2312

charges in its response to Defendant's motion, and argued that it had presented evidence to

address each count.  (Doc. 272 at 87:1-10.)  After hearing argument on the motion which

encompassed all charges in the Second Superseding Indictment, the undersigned stated

> I have . . . listened carefully and taken notes every day of the testimony that
> I've heard throughout this proceeding from the very beginning.  I'm fully aware
> of what the various counts of the indictment are and what the elements are that
> must be proven, in order to establish those various counts.
>
>     Based upon that, . . . the question is whether the evidence is insufficient
> to sustain a verdict.  Specifically, the rule states[:] "After the Government closes
> its evidence or after the close of all evidence, which is the case here, the Court,

on the Defendant's motion, must enter a Judgment of Acquittal of any offense for which the evidence is insufficient to sustain a conviction."

Having carefully reviewed the evidence, in fact, having reviewed it before this conference, I find there is sufficient evidence for the matter to proceed to the jury and, therefore, your Motion of Acquittal is denied.

(Doc. 272 at 88:23-89:16.)

These examples from the Trial Transcript show that any implication that there was insufficient evidence to convict on Counts 5 and 6 absent a state court finding of guilt that Defendant had stolen the vehicles identified in these counts is without merit.  Having found the evidence sufficient to go the jury at the close of the presentation of evidence based on consideration of the elements necessary to satisfy each claim, including Counts 5 and 6 related to stolen vehicles, and presented with no reason to make a contrary finding now, the Court concludes that Defendant's assertion as to stolen vehicles provides no basis to grant his pending motion.

Defendant's assertion regarding stolen firearms is similarly unavailing.  Counts 7 and 8 for Interstate Transportation of a Stolen Firearm charge violations of 18 U.S.C. § 922(i) which provides that "[i]t shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen."  The Court instructed the jury that the Government had to prove two elements beyond a reasonable doubt for Defendant to be found guilty of these charges: he knowingly transported a stolen firearm from one

state to another, and he knew or had reasonable cause to believe that the firearm was

stolen." (Doc. 273 at 24:6-9.)

Both in response to Defendant's previous Motion for a Judgment of Acquittal made

at trial and in the closing argument, the Government reviewed the evidence as to Counts 7

and 8, including evidence that Defendant stole the guns from his uncle. (Doc. 272 at 87:11-

18.) As with Counts 5 and 6, the Court found the evidence presented with all counts,

including Counts 7 and 8, sufficient to go to the jury and has no reasons to find otherwise

now.

### 2. *Attendance at State Court Hearings*

Defendant's second assertion offered in support of his motion—that he was blocked

from attendance at state court hearings—presents neither a claim of the insufficiency of

evidence presented at trial nor any indication of a tangential relationship between state

court proceedings and federal court proceedings on the charges contained in the Second

Superseding Indictment (Doc. 47).  On the contrary, the only reference to a problem with

attendance at state court proceedings contained in the record is found after the jury

rendered its verdict and had been excused: as the Court was about to adjourn the

proceedings, Defendant stated that he had "[o]ne thing . . . for the court record" which was

"not specifically about this case, but  . . . an ancillary matter." (Doc. 273 at 61:4-6.)

Defendant proceeded to inform the undersigned that he had had a problem "where the U.S.

Marshals or somebody in the D.O.J." was not allowing him to attend state court proceedings

in Schuylkill County and Carbon County "at certain times." (*Id.* at 61:13-18.)   The Court

then clarified the procedure for attendance at state court proceedings with the Assistant

U.S. Attorney and established that the coordination between state and federal officials

necessary to accomplish attendance would not be impeded from the federal side or by any

scheduled proceedings in federal court which conflicted with upcoming state court

proceedings. (*Id.* at   61:19-62:14.)

As Defendant recognized in the courtroom, the attendance at state court

proceedings about which he complained was not related to the jury's verdict in this case.

Thus, the assertion presents no basis to grant his Motion for Judgment of Acquittal.

### 3. *Access to Legal Information*

Defendant states he was denied access to important legal information by the FBI,

United States Marshals Service, and Lackawanna County Prison. (Doc. 213 at 1.)   He

presents no supporting information or documentation and does not relate the assertion to

any aspect of the Court's consideration of his Rule 29 motion. (*Id.*)   Notwithstanding these

deficiencies, a review of the docket shows that the Court has promptly addressed

Defendant's alleged problems with discovery in this matter. (*See*, *e.g.*, Docs. 157, 158.)

For example, in response to Defendant's assertions submitted by letter and docketed on

September 16, 2019, regarding difficulty obtaining various investigatory documents and

information from the Government and the Federal Public Defender's office, the Court, by

Order of September 16, 2019, ordered both entities to respond to Defendant's allegations

and they timely did so.  (Docs. 157, 158, 162, 165.)  Following the requisite filings,

Defendant made no further inquiries or requests of the Court concerning the matters raised

in his September 16, 2019, letter before trial commenced on November 18, 2019.

Based on Defendant's conclusory statement and the Court's review of the record,

the Court has no basis to find Defendant's allegation relevant to his pending Motion for a

Judgment of Acquittal.

### 4.  Supporting Brief

In his supporting brief, Defendant alleges that the Government has

"destroyed/planted evidence, with every item of audio/video evidence altered or missing.

No FD-302's from the vehicle owners, or from DA John Morganelli, have been filed.  DA

Morganelli stated to Newsweek that he was not a victim."  (Doc. 244 at 2.)

In its responsive brief, the Government notes that the "FD-302s" referenced by

Defendant are presumably FBI 302 reports which are not required to be filed with the

Court.  (Doc. 252 at 12.)  The Government asserts generally that the "bald, unsupported

allegation[s]" do not meet the heavy burden that Rule 33 requires for granting a new trial.

(*Id*.)  The Government further contends that "[n]othing Christy alleges, even if true, would

have probably produced an acquittal or resulted in a miscarriage of justice."  (*Id*.)

Appropriately supported allegations of destroyed/planted, altered or missing

evidence (Doc. 244-2) could *potentially* support a conclusion that a miscarriage of justice

occurred.  Thus, while unfiled FD-302s and a Newsweek statement are immaterial to a

finding of guilt, the Court has no basis in this case to question the Government's statement that Defendant's allegations, if true, would probably not have produced an acquittal or miscarriage of justice. Defendant provides no details regarding his allegations despite having been alerted to their deficiency by the Government's brief. Notably, Defendant had multiple opportunities to reply to the Government's arguments and failed or declined to do so: he did not file a reply brief and, when offered the opportunity to file a supplemental brief after he received the trial transcript (Doc. 283), he stated in his June 15, 2020, filing that he had "no more information to add" (Doc. 286 at 1). Given Defendant's failure to proffer any evidence in support of assertions contained in his supporting brief, he has not demonstrated that any allegation contained therein supports his Motion for a Judgment of Acquittal.

Having reviewed all grounds offered as support for his Motion for a Judgment of Acquittal (Docs. 213, 244), the Court concludes the motion is properly denied. As is abundantly clear from the preceding discussion, Defendant presented only conclusory assertions in his motion and supporting brief. (*Id*.) As noted above, on notice of the inadequacies of these filings (Doc. 252) and given the opportunity to expand upon the reasons proffered in support of his motion (Doc. 283), Defendant chose not to do so (Doc. 286). Thus, Defendant chose to stand on the conclusory assertions which cannot satisfy his burden of showing he is entitled to a judgement of acquittal. The jury heard the testimony, saw the exhibits, heard the closing arguments, was advised of the elements of

each offense and the requisite burden of proof, and concluded that the Government had provided evidence which established beyond a reasonable doubt that Defendant was guilty of the crimes charged.  The Court found the evidence sufficient to go to the jury when Defendant made his Motion for a Judgment of Acquittal after the presentation of evidence at trial.  As advised by our Circuit Court, this Court "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *Fattah*, 914 F.3d at 182–83.  With his present motion and related filings, Defendant has provided no reason for the Court to alter its previous determination of the sufficiency of the evidence.  For all of these reasons, the Court must uphold the jury's verdict and deny Defendant's pending Motion for a Judgment of Acquittal.

### 5. Renewal of Prior Motion

Defendant also renews his Motion for a Judgment of Acquittal made after the presentation of all evidence at trial.  (Doc. 213 at 1.)  As discussed above, the Court denied his motion--after reviewing notes of testimony and offense elements, the Court concluded that there was sufficient evidence for the case to proceed to the jury.  (Doc. 272 at 88:23-89:16.)  Also as discussed, with his pending motion, Defendant presents no basis to reconsider the Court's previous determination.  Therefore, Defendant's renewal of his prior motion cannot provide the relief requested.

## B. Motion for a New Trial

With the pending motion, Defendant identifies ten reasons (two with subparts) that

he should be granted a new trial.  (Doc. 213 at 1-2.)  The Government has responded to

each alleged error and concludes that Defendant has presented no basis for a new trial.

(Doc. 252.)

Rule 33 of the Federal Rules of Criminal Procedure provides in pertinent part that

"[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if

the interest of justice so requires. If the case was tried without a jury, the court may take

additional testimony and enter a new judgment."  Fed. R. Crim. P. 33(a).

> Unlike an insufficiency of the evidence claim, when a district court evaluates a
> Rule 33 motion it does not view the evidence favorably to the Government, but
> instead exercises its own judgment in assessing the Government's
> case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002). However,
> even if a district court believes that the jury verdict is contrary to the weight of
> the evidence, it can order a new trial "only if it believes that there is a serious
> danger that a miscarriage of justice has occurred—that is, that an innocent
> person has been convicted." *Id.* (citation and quotation marks omitted). . . .
> Such motions are not favored and should be "granted sparingly and only in
> exceptional cases." *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d
> Cir.1987) (citations omitted).

*United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008).  "The discretion that federal

trial courts exercise in addressing allegations of juror and prosecutorial misconduct extends

to the determination of whether prejudice has been demonstrated."  *United States v. Smith*,

139 F. App'x 475, 477 (3d Cir. 2005) (citing *United States v. Resko,* 3 F.3d 684, 690 (3d

Cir.1993)).  Exceptional cases include those in which trial errors "so infected the jury's

deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (citation omitted). In this inquiry, the district court should consider the combined effect of claimed errors. *United States v. Hoffecker*, 530 F.3d 137, 168 (3d Cir. 2008).

As with his Motion for a Judgment of Acquittal, Defendant presents bare-bones assertions with no supporting authority, argument, or citation to the record. (*See* Doc. 213 at 1-2; Doc. 244 at 2.) Despite the insufficiency of the substance and manner of presentation, the Court will nonetheless review each reason proffered.

### 1. Jury Pool and News Interview

Defendant's first reason for a new trial is twofold: the jury pool was tainted by news reports played on TV at the start of the selection process as admitted by a struck juror, and the defendant was blocked by the United States Marshals Service for a news interview. (Doc. 213 at 1.)

### a. Jury Pool

With his assertion that the jury pool was tainted by news reports played on TV at the start of the jury trial "as admitted by a struck juror," Defendant does not point to any specific evidence that an individual who served on the jury was tainted. (Doc. 213 at 1.) The Government argues that there is no evidence that the jury pool was tainted and the Court individually inquired of each juror about the juror's knowledge of the case. (Doc. 252 at 6.)

"It is fundamental that every litigant who is entitled to trial by jury is entitled to an

impartial jury, free to the furthest extent practicable from extraneous influences that may

subvert the fact-finding process." *Waldorf v. Shuta,* 3 F.3d 705, 709 (3d Cir.1993); *see also*

*United States v. Bertoli*, 40 F.3d 1384, 1393 (3d Cir. 1994). In *United States v. Resko*, 3

F.3d 684 (3d Cir. 1993), the Circuit Court noted that

> [i]t has long been recognized that when jurors are influenced by the media and
> other publicity, or when they engage in communications with third parties, these
> extra-record influences pose a substantial threat to the fairness of the criminal
> proceeding because the extraneous information completely evades the
> safeguards of the judicial process.

*Id.* at 690. "'[V]oir dire' is the appropriate method for inquiry into possible prejudice or bias

on the part of jurors[--]the procedure used must provide a reasonable assurance for the

discovery of prejudice." *Waldorf,* 3 F.3d at 709 (internal quotation and citation omitted).

"[T]he particular method of conducting voir dire is left to the sound discretion of the district

court." *Id. Resko* specifically noted that the trial judge has discretion to decide how to deal

with a situation in which there is an allegation related to extraneous influence and the

discretion extends to the determination of whether prejudice has been demonstrated. *Id.*

(citing *Government of V.I. v. Dowling*, 814 F.2d 134, 137-38 (3d Cir. 1987); *United States v.*

*Clapps*, 732 F.2d 1148, 1152 (3d Cir. 1984)). The district court must "'meaningfully . . .

assess the nature and extent of the [alleged impropriety] to ascertain whether there has

been any prejudice to the defendant[]." *Bertoli*, 40 F.3d at 1394 (citing *Resko*, 3 F.3d at

690).

16

Here, the initial question asked of the jury pool was whether "any of you have been told, heard, read, seen or learned anything about this case from any source whatsoever." (Doc. 267 at 7:5-6.)  When forty-five prospective jurors responded affirmatively, the Court explained the individual voir dire process and the need to question prospective jurors individually to determine whether the Court believed the individual could render a fair and impartial verdict based only on the evidence presented in the courtroom or whether their knowledge influenced them in such a way that they could not be deemed to be impartial. (Doc. 267 at 9:18-10:1.)  Some prospective jurors were struck for cause based on a question of impartiality.  (*See, e.g.*, Doc. 267 at 24:24-32:9, 38:25-43:20.)  Importantly, the transcript shows that each prospective juror who responded affirmatively to the initial question was thoroughly vetted and there is no indication that a partial individual served on the chosen panel.  In other words, the Court meaningfully assessed the nature and extent of the prospective juror's exposure to extraneous information and the impact it had on them. *See Bertoli*, 40 F.3d at 1394; *Resko*, 3 F.3d at 690.  The Court struck each individual for whom potential prejudice to the defendant was a concern.  *Id.*  Thus, the Court cannot conclude that Defendant's claim that the jury pool was tainted provides a basis for a new trial.

*b. Obstruction of First Amendment Rights*

Defendant also states that he was blocked by the United States Marshals Service "for a news interview" which obstructed his First Amendment rights.  (Doc. 213 at 1.)  This allegation, taken as true, provides no basis for relief under Rule 33.

**2.  *Harassment by Deputy United States Marshal***

Defendant contends that a U.S. Marshal who was a transport officer on a day of trial harassed him.  (Doc. 213 at 1.)  The Government responds that Defendant "fails to specify the nature of the alleged harassment, and does not indicate how the alleged harassment caused an unjust verdict or miscarriage of justice in this case.  It is an allegation unsupported by any assertions of facts and circumstances."  (Doc. 252 at 7.)

The Court agrees with the Government's assessment of the claim.  Further, as noted above, Defendant had the opportunity to respond to the Government's argument and did not do so.  Finally, as with his First Amendment claim, even if behavior which Defendant considered harassing took place during transport, the assertion, without more, provides no basis for a new trial.

**3.  *Personal Care***

Defendant maintains that he was not allowed proper personal care or the ability to shave during trial.  (Doc. 213 at 1.)  The Government discounts this claim for vagueness and personal observation of his trial appearance, stating that Defendant's "appearance at trial was at all times normal and he looked well-groomed."  (Doc. 252 at 7.)

As with Defendant's previously considered allegations, he provides no details in

support of his personal care statement.  Further, trial transcripts show that he did not raise

the issue to the Court.  The only time there is a reference to shaving in the trial transcript is

when a witness identified Defendant by describing him as "the gentlemen seated at Defense

table on the right-hand side with the shaved head." (Doc. 268 at 68:24-68:2.)  The

undersigned concurs with the Government that Defendant's appearance at trial did not

exhibit a lack of personal care.  Thus, insofar as Defendant seeks to imply that the jury was

prejudiced by his unkempt appearance, no such inference can be drawn from the record or

trial observations.

### 4. Dental Issue

Defendant states that he was in pain and dental care was refused during trial.  (Doc.

231 at 1.)  The Government responds that Defendant

> does not say when he requested dental care or what kind of dental care he
> requested during the trial. He did not complain to the Court during the trial that
> he was unable to proceed due to dental pain. There was nothing about his
> mannerisms or questions or statements that he made during the trial that
> indicated he was experiencing dental pain. Finally, he does not explain how
> this alleged dental pain impacted the verdict in this case.

(Doc. 252 at 8.)

For the reasons identified by the Government, the Court concludes that Defendant's

assertion regarding dental care does not provide a reason for a new trial.  Defendant had

the opportunity to refute any or all aspects of the Government's argument and did not do so.

The Court has reviewed the trial transcript and confirmed that Defendant did not raise the

19

issue at trial. Further, nothing about his appearance or demeanor suggested that he was

experiencing any pain, let alone pain which was impeding any aspect of the trial

proceedings.

### 5. Access to Paperwork

Defendant states that he was not allowed access to legal paperwork while in the

United States Marshals Service holding cell. (Doc. 213 at 1.) The Government responds

that Defendant

> fails to identify what legal paperwork he was denied access to, or how that
> alleged denial affected the verdict in the case. Christy never complained to the
> Court that he was denied access to legal paperwork, and there is no evidence
> that his stand-by counsel was refused access to Christy's legal paperwork or
> access to Christy. Christy never asked for additional time to review legal
> paperwork.

(Doc. 252 at 8-9.)

The Court concurs with the Government's assessment of this proffered reason for a

new trial. As with Defendant's other assertions, he gives no indication how his lack of

access to paperwork for a limited period of time affected the trial or had a substantial impact

on the outcome of the proceedings. *See Thornton*, 1 F.3d 149, 156. Thus, Defendant's

statement does not support his claimed entitlement to a new trial.

### 6. Internet Access

Defendant contends that he was denied internet access to evaluate prospective

jurors and the Government had internet access. (Doc. 213 at 1.) The Government

responds that Defendant never requested access for the stated purpose, nothing prevented

his standby counsel from accessing the internet, and Defendant does not explain how the alleged denial affected the outcome of the case.  (Doc. 252 at 9.)

The Court's review of the record does not show that Defendant requested internet access to evaluate prospective jurors or complained of his lack of access for this purpose to the Court.  Importantly, although Defendant chose to represent himself in these proceedings and the Court granted his request to do so on September 3, 2019 (Doc. 153), standby counsel was appointed on September 4, 2019 (Doc. 155) and was actively engaged in that capacity through subsequent pretrial and trial proceedings.  Therefore, if Defendant lacked access to the internet to conduct the desired evaluation, he could have called upon standby counsel to assist him.  *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (Defendant's rights to self-representation "are not infringed when standby counsel assists pro se defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task . . . that the defendant has clearly shown he wishes to complete.").  Further, having presented no indication of related prejudice, this asserted basis for a new trial is without merit.

### 7. Prior Notice of Evidence and Trial Transcripts

Defendant's seventh asserted reason for a new trial is two-fold: the Government did not give him prior notice of certain items of evidence or copies and Defendant did not have a trial transcript.  (Doc. 213 at 2.)

*a. Prior Notice of Evidence*

With his conclusory, one-sentence statement, Defendant' first alleges that the

Government did not give him prior notice "of certain items of evidence or copies." (*Id.*)  The

Government responds that Defendant "does not specify what 'items' he or standby counsel

were not notified about.  Such bald, unsupported allegations are insufficient to support a

motion for a new trial."  (Doc. 252 at 9.)

Insofar as Defendant seeks to imply that the Government violated its obligations

under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding evidence which was favorable

to him and material to his guilt, i.e., evidence which the Government had a duty to disclose,

*id*.; *Smith v. Cain*, 565 U.S. 73, 75 (2012), he has not satisfied any prerequisite to making

out such a claim and it is his burden to do so, *United States v. Pelullo*, 399 F.3d 197, 209

(3d Cir. 2005).  As stated recently in *United States v. Lacerda*, 958 F.3d 196 (3d Cir. 2020),

> there are three prerequisites to a *Brady* violation: (1) the government must
> have failed to disclose evidence; (2) that evidence must have been favorable
> to the defendant; and (3) that evidence must have been material. Evidence is
> "material" only if there is a reasonable probability that its disclosure would have
> led to a different outcome at trial, and so undermines confidence in the
> verdict. *Turner v. United States*, —— U.S. ——, 137 S. Ct. 1885, 1893, 198
> L.Ed.2d 443 (2017).

958 F.3d at 218–19.

Under this standard, even if the Government failed to disclose "certain items of

evidence" (Doc. 213 at 2), the evidence must have been favorable to Defendant and it must

have been material.  958 F.3d at 218.  Thus, Defendant's conclusory statement does not

show that he is entitled to a new trial based on lack of prior notice of certain evidence: it is far too vague to make out a claim that the Government suppressed evidence and even farther from making the requisite showing that the lack of notice or copies affected the verdict. *Thornton*, 1 F.3d at 156.

### b. Lack of Transcript

Any impediment related to the lack of a transcript has been remedied. On February 10, 2020, Defendant filed a "Motion for Production of Transcripts at Government's Expense" (Doc. 229), requesting a transcript of his criminal trial. Defendant's motion asserted that the transcript was necessary as he was "preparing a sentencing memorandum as well as arguments that he would like to present to the Court in a renewed motion for judgment of acquittal." (*Id*.) The Court granted this motion (Doc. 248) and, on April 20, 2020, the official trial transcript was filed of record.

On June 5, 2020, Defendant's standby counsel informed the Court that he had hand-delivered a copy of the entire trial transcript to Defendant (Doc. 282). On the same day, in order to afford Defendant "every benefit, and in light of Defendant's request for the trial transcript, in part to support arguments in support of his motion for judgment of acquittal/new trial," the Court allowed Defendant until June 19, 2020, to file a supplemental brief in support of his Motion for a Judgment of Acquittal/Motion for a New Trial and allowed the Government fourteen days to file a supplemental response. (Doc. 283.) On June 15, 2020, Defendant informed the Court that he declined to file a supplemental brief, stating that

he had read the trial transcript in full and had "no more new information to add." (Doc. 286

at 1.) Thus, any prejudice which possibly could have been related to the claimed lack of

access to the trial transcript was remedied and this claimed reason for a new trial is without

merit.

## 8. Witness Testimony

Defendant states that the Government never called a Pennsylvania State Police

Computer Crimes Unit Trooper to testify. (Doc. 213 at 2.)   The Government responds that

[t]his allegation appears to challenge the sufficiency of evidence because the
government did not call a Pennsylvania State Police Computer Crimes Trooper
to testify at trial. Christy does not explain or specify how the absence of such
testimony affected the verdict in the case, or even what such trooper would
have testified about.

(Doc. 252 at 10.)

The Court concurs with the Government that Defendant's statement concerning

witness testimony provides no basis for a new trial.  While the Government had an

obligation to disclose evidence that was favorable to Defendant and material to his guilt,

*Brady v. Maryland*, 373 U.S. 83; *Smith v. Cain*, 565 U.S. at 75, the Government was under

no obligation to call witnesses whom Defendant wanted to testify.  If Defendant wanted a

Pennsylvania State Police Computer Crimes Unit Trooper to testify, it was up to him (with

the assistance of standby counsel if desired) to secure the witness's attendance at trial.

Thus, even assuming that a Pennsylvania State Police Computer Crimes Unit Trooper

would have provided testimony favorable to Defendant, Defendant's own failure to secure

the witness forecloses a finding of trial error related to the lack of testimony because any prejudice is attributable to Defendant himself. The Court's Rule 33 inquiry is concerned with whether Defendant has demonstrated the requisite prejudice based on *prosecutorial* misconduct. *Smith*, 139 F. App'x at 477; *Resko,* 3 F.3d at 690. There being no such demonstration of error here, the claimed error regarding witness testimony could not be found relevant to the outcome of the trial or a miscarriage of justice. *See*, *e.g.*, *Silveus*, 542 F.3d at 1004–05.

### 9. Subpoena

Defendant next asserts that the Court denied him the ability to subpoena Pennsylvania State Police Trooper Watkins. (Doc. 213 at 2.) The Government responds that it is not aware that the Court denied Defendant the ability to subpoena any witness and recalls the Court informing Defendant he could subpoena any witnesses he wanted. (Doc. 252 at 10.) The Government also avers that Defendant "does not state what Trooper Watkins would have testified about, or how such testimony would have been relevant to his defense and could have affected the verdict in this case." (*Id*.)

The Court concludes that Defendant provides no evidence that he moved to subpoena Trooper Watkins. Moreover, the trial transcript from November 25, 2019, reflects that the undersigned specifically told Defendant "if you want to subpoena Mr. Watkins and bring him in, I'll allow you to do that." (Doc. 272 at 26:21-22.) On the same day, Defendant's answer to a question posed by the AUSA upon cross-examination included a

25

reference to a subpoena of Trooper Watkins: "It seems that what you have on your brain is

that you cannot admit the fact that phone records were altered in this case and that you

refused to subpoena Trooper Watkins in this case." (Doc. 272 at 67:1-4.) Because the

record shows that the Court did not deny him the ability to subpoena Trooper Watkins and

his complaint at trial was that the *Government* had not subpoenaed Trooper Watkins, his

contention is without merit and immaterial to his motion.

### *10. Limitation of the Defense*

Defendant states that the Court "denied the defendant ability to offer evidence on

behalf of his defense, including but not limited to evidence to impeach witnesses, and prove

that DA John Morganelli was not a 'victim' in the case, and that defendant's statements

were not threats." (Doc. 213 at 2.)   The Government responds that Defendant

> does not identify the alleged impeachment evidence, which witnesses such
> evidence would have impeached, how such evidence would prove that D.A.
> Morganelli was not a victim and his statements were not threats. Moreover, the
> Supreme Court and the Third Circuit Court have held that an allegation that
> evidence exists that would impeach a government witness does not justify the
> granting of a new trial under Rule 33 . *See Mesarosh v. United States*, 352 U.S.
> 1, 9 (1956); *United States v. Norman*, No. CRIM.A. 06-377-4, 2011 WL
> 5022828, at \*2 (E.D. Pa. Oct. 18, 2011), aff'd, 458 F. App'x 105 (3d Cir. 2012)
> (not precedential); *United States v. Saada*, 212 F.3d 210, 216 (3d Cir.2000).

(Doc. 252 at 11.)

The Court agrees that, once again, Defendant's lack of specificity renders his

allegations inadequate to support his claimed entitlement to a new trial.  He does not show

how evidence he wanted to offer would have had "a substantial influence on the outcome of

the trial," *Thornton*, 1 F.3d at 156, or how the lack of evidence caused a miscarriage of justice.  *Silveus*, 542 F.3d at 1004-05.

In sum, taking Defendant's numerous reasons proffered as support for his Motion for a New Trial either individually or in combination, he has not provided the Court with any basis to "believe[] that there is a serious danger that a miscarriage of justice has occurred— that is, that an innocent person has been convicted." *Silveus*, 542 F.3d at 1004–05 (3d Cir. 2008).  As with his Motion for a Judgment of Acquittal, Defendant had the opportunity to provide additional support for the assertions originally proffered, and he declined to do so. (*See* Docs. 283, 286).  Thus, his Motion for a New Trial will be denied.[1]

## III. CONCLUSION

For the reasons discussed above, Defendant's Motion for a Judgment of Acquittal/Motion for New Trial (Doc. 213) will be denied.  A separate Order will be filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[1] Defendant does not request a hearing on his pending motion and he did not refute the Government's assertion that a hearing is not necessary (Doc. 252) though he had ample opportunity to do so (*see* Docs. 383, 386).  Based on the parties' arguments, the Court's review of the record, and relevant authority, the Court concludes that a hearing is not necessary to determine the disposition of Defendant's motion.