THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN CHRISTY,<br>Petitioner | : | |
| v. | : | CASE NO. 3:18-CR-223<br>(RELATED CASE NO. 3:25-CV-392) |
| UNITED STATES OF AMERICA,<br>Respondent | : | (JUDGE MARIANI) |

# MEMORANDUM OPINION

## I. INTRODUCTION AND PROCEDURAL HISTORY

On July 10, 2018, Defendant Shawn Christy was indicted by a federal grand jury on four counts of issuing threats in early June of 2018 against Donald J. Trump, the President of the United States, in violation of 18 U.S.C. § 871, and against law enforcement and an individual identified as "J.M." in violation of 18 U.S.C. § 875(c). (Doc. 6). An arrest warrant was issued that same day. (Doc. 9). However, Defendant was not apprehended by law enforcement until October of 2018, when he was arrested in Ohio and was subsequently transferred to the Middle District of Pennsylvania. (*See* Docs. 12, 13).

On November 27, 2018, the grand jury returned a Superseding Indictment, retaining the four threat counts and adding seven counts: one count of interstate transportation of a stolen vehicle, and six firearms-related counts, including interstate transportation of a stolen firearm, interstate transportation of a firearm while under an information for a felony, and unlawful possession of a firearm while a fugitive and a convicted felon. (Doc. 28). Each of

the additional offenses were alleged to have been committed in late July and August of 2018, after Defendant Christy was first indicted and the arrest warrant issued.

Thereafter, on December 11, 2018, the grand jury returned a Second Superseding Indictment, retaining all of the counts in the previous indictments, and adding a single additional count of interstate transportation of a stolen vehicle, a 2002 Ford F-350 allegedly transported by Defendant across state lines "on or about and between July 7, 2018 and July 8, 2018." (Doc. 47 at 5, Doc. 50). Specifically, the 12-count Second Superseding Indictment charged Christy as follows:

> Count 1: Threats made on or about June 12, 2018, against the President of the United States (Facebook posting that Defendant "was going to shoot President Donald J. Trump in the head"), in violation of 18 U.S.C. § 871.
>
> Count 2: Threats made on or about June 3, 2018, against law enforcement (Facebook posting that Defendant would "'use lethal force on any law enforcement officer that attempts to detain' [Defendant] as a result of a bench warrant"), in violation of 18 U.S.C. § 875(c).
>
> Count 3: Threats made on or about June 12, 2018, against a person, J.M. (Facebook posting that Defendant "promised to put a bullet in the head of J.M."), in violation of 18 U.S.C. § 875(c).
>
> Count 4: Threats made on or about June 12, 2018, against a person, J.M. (Facebook posting "'You're a dead man [J].M. . . . Lets play.'"), in violation of 18 U.S.C. § 875(c).
>
> Count 5: Interstate transportation of a stolen black 2002 Ford F-350 from Pennsylvania to New York on or about and between July 7, 2018, and July 8, 2018, in violation of 18 U.S.C. § 2312.
>
> Count 6: Interstate transportation of a stolen silver 2008 Dodge Caravan from Pennsylvania to West Virginia on or about and between July 29, 2018, and August 3, 2018, in violation of 18 U.S.C. § 2312.

> Count 7: Interstate transportation of a stolen 9mm firearm from Pennsylvania to Maryland on or about and between July 25, 2018, and August 20, 2018, in violation of 18 U.S.C. § 922(i).
>
> Count 8: Interstate transportation of a stolen .22 caliber firearm from Pennsylvania to Kentucky on or about and between July 25, 2018, and August 20, 2018, in violation of 18 U.S.C. § 922(i).
>
> Count 9: While under an information for a state felony offense (aggravated assault), interstate transportation of a stolen 9 mm firearm from Pennsylvania to Maryland on or about and between July 25, 2018, and August 20, 2018, in violation of 18 U.S.C. § 922(n).
>
> Count 10: While under an information for a state felony offense (aggravated assault), interstate transportation of a stolen .22 caliber firearm from Pennsylvania to Kentucky on or about and between July 25, 2018, and August 20, 2018, in violation of 18 U.S.C. § 922(n).
>
> Count 11: While a fugitive from justice, on or about July 25, 2018, possession of firearms, in violation of 18 U.S.C. § 922(g)(2).
>
> Count 12: On or about July 25, 2018, possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

(*See* Doc. 47).

On September 3, 2019, at the request of Defendant Christy to proceed *pro se*, and the parties having agreed, following an evaluation of Christy at the Federal Bureau of Prisons – MCC, that Christy was competent to stand trial, the Court held a hearing in accordance with *Faretta v. California*, 422 U.S. 806 (1975) and *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002). At the hearing, the Court conducted a colloquy with Christy, in the presence of his counsel from the Federal Defenders' Office, to determine whether Defendant understood the responsibilities and consequences of self-representation, was

knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted to represent himself. Following this colloquy, the Court determined that Christy had knowingly, voluntarily, and intelligently waived the right to counsel and understood the ramifications and consequences of proceeding *pro se* and therefore granted Defendant's request to represent himself. The Court thereafter appointed CJA Attorney David Cherundolo as stand-by counsel.

On November 27, 2019, following a seven-day trial, the jury returned a verdict finding Defendant Christy guilty on each of the twelve counts contained in the Second Superseding Indictment (Docs. 208, 211).

Following the conclusion of the trial, Christy filed a Motion for Judgment of Acquittal and Motion for New Trial (Doc. 213), which was denied by this Court (Docs. 294, 295). Christy was thereafter sentenced to an aggregate term of imprisonment of 240 months, to be followed by three years of supervised release on each count, to run concurrently. (Doc. 316).

Christy's stand-by counsel timely filed an appeal of Christy's conviction and sentence on his behalf. On appeal, Christy argued that this Court erred in (1) allowing him to represent himself, (2) denying his motion for judgment of acquittal, and (3) denying his motion for a new trial, and further argued that his sentence was harsh, excessive, and substantively unreasonable. *See generally*, *United States v. Christy*, 2024 WL 548029 (3d Cir. 2024). On February 12, 2024, the Third Circuit rejected each of Christy's arguments

and affirmed his conviction and sentence. *Id.* The Supreme Court denied Christy's petition for writ of certiorari on April 15, 2024.

Presently before the Court is Shawn Christy's *pro se* Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 422). For the reasons set forth herein, the Court will deny Christy's Motion.

## II. Standard of Review

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b). Generally, the petitioner bears the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

"The general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). This is because failing to raise an issue on direct appeal will "procedurally default," or bar, that issue from being raised in habeas. *United States v. Garth*, 188 F.3d 99, 106 (3d Cir. 1999). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate . . . 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 621. It is the defendant's burden to show cause and prejudice or actual innocence to proceed with his claims. *Id.* *See also*, *Fernandez v. United States*, 608 U.S. --, 146 S.Ct. 1292, 1300 (2026) ("With very narrow exceptions, a prisoner gets only one shot at collateral relief. §§ 2255(h)(1)-(2). Claims that have already been raised and rejected on direct review typically cannot be relitigated in § 2255 motions. . . And claims *not* raised on direct review are procedurally defaulted unless the prisoner can demonstrate 'cause' and 'prejudice,' or else actual innocence. If the prisoner clears these procedural hurdles, he must demonstrate that the applicable substantive law entitles him to relief.") (internal citations omitted) (italics in original).

To show "cause," the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). Some external factors that have been found to constitute "cause" are

"interference by officials," "a showing that the factual or legal basis for a claim was not reasonably available to counsel," and "ineffective assistance of counsel." *Id.* at 494. Ultimately, for a petitioner "[t]o show cause, he must explain what prevented him from timely raising the defaulted claim." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 759 (3d Cir. 2018). Once a petitioner has shown "cause" to excuse the procedural default, he must still show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Accordingly, the defendant must prove that, if not for the error, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

Section 2255 does not provide a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact only when there is "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). The claimed defect must "present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id.* (citations omitted).

Allegations are not sufficient to support a motion under § 2255. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A petitioner must set forth facts to support his contentions.

*Zettlemover v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991). "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000) (citing *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988)).

If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low

> threshold for habeas petitioners to meet." *McCoy*, 410 F.3d at 134 (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d 542, 545-546 (3d Cir. 2005).

## III. Analysis

Shawn Christy requests that this Court vacate his conviction "on all counts 1-12 and/or grant new trial – sentence reduction" (Doc. 422, at 12) and sets forth four grounds in support thereof. The Court will address each ground in turn.

### *A. Ground One*

Christy first argues that he "has qualified immunity under Fed. R. Crim. P. Rule 12.3 as a Deputy United States Marshal" (Doc. 422, at 4).[1] In support of his claim that he is/was a Deputy U.S. Marshal, Christy cites to Exhibits 1.1-1.3 of his motion (Docs. 422-1, 422-2, 422-3). Those exhibits consist of an Incident Report from the Northeast Ohio Correctional Center detailing an incident on August 8, 2024 (six years after the commission of the crimes at issue in this case) wherein an inmate assaulted Christy and another inmate. The first

---

[1] Federal Rule of Criminal Procedure 12.3, entitled "Notice of a Public-Authority Defense", dictates that "[i]f a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk"; the notice must contain "the law enforcement agency or federal intelligence agency involved", "the agency member on whose behalf the defendant claims to have acted", and "the time during which the defendant claims to have acted with public authority." Fed. R. Crim. P. 12.3(a)(1)-(2).

page of the Report lists the other two inmates as "USMS Prisoner[s]" and Christy as "USMS Prisoner[,] Deputy US Marshal (DUSM)".

Christy asserts that he was prejudiced prior to, and at, trial because he was unable to raise the defense of qualified immunity "due to prosecutorial misconduct" and by the Government's continuing refusal to both disclose to Christy his status as a law enforcement agent and witnesses who would have known this status. (Doc. 422, at 4).

Christy's claim in Ground One is patently frivolous and without merit. The Court will not speculate as to why the Incident Report, in addition to listing Christy's "sub-type" as a prisoner, also lists another "sub-type" as Deputy U.S. Marshal. However, it is evident that Christy could not have been acting in the capacity of a U.S. Marshal or law enforcement officer at the time of the commission of his crimes in 2018 if he did not know that he was, in fact, a Deputy Marshal or law enforcement officer or acting on their behalf in 2018. Moreover, while Christy states that he did not raise this issue on direct appeal because the "[i]nformation [was] not made available to Defendant at [the] time; only provided by US Marshals while in federal custody in Ohio. . ." (Doc. 422, at 4), where Christy flatly admits that he did not know he was a law enforcement officer, it is clearly illogical that he could have been acting as a law enforcement officer in 2018 and not have been aware of his asserted status. Nor has Christy presented any evidence, aside from the solitary statement

on one Incident Report six years after the commission of his crimes, to support his claim that he was acting as a Deputy U.S. Marshal in 2018.[2]

### *B. Ground Two*

Shawn Christy next argues that the Government failed to disclose "required Brady-Giglio and material [was] not provided at trial by government per Donald Trump's involvement in case." (Doc. 422, at 5). In support of this claim, Christy cites to portions of *Zero Fail: The Rise and Fall of the Secret Service*, a 2021 investigative book by Carol D. Leonnig, "which detail[s] the DEEP STATE involvement of the FBI takeover from the USSS" and further claims there are also "internal law enforcement reports from Secret Service Director at the Oval Office meeting, and [former U.S. Secretary of Homeland Security] Kirstjen Nielsen's report." (*Id.*) (capitalization in original). Renewing his argument set forth in Ground One, Christy argues that "the government did not disclose to anyone that I was a[n] undercover law enforcement officer at the time of the alleged offenses" resulting in "ongoing slander of my name and reputation, threats against me and my family including the attempted murder of Caitlyn and our daughter, and the death of my cat." (*Id.*). Christy again explains that he did not raise this issue on direct appeal because the information was "not available to me at the time of trial or before." (*Id.*).

---

[2] For this same reason, Christy's claim is also deemed waived where he did not present the issue set forth in Ground One on direct appeal.

"Pure speculation that exculpatory information might exist is insufficient to sustain a *Brady* claim." *United States v. Georgiou*, 777 F.3d 125, 141 (3d Cir. 2015). Here, Christy's claim relies on an entirely unsupported and absurd assertion: the existence of evidence demonstrating that he was employed, although he did not know it, as a law enforcement officer in 2018 and, further, that President Trump and high-ranking members of his administration were both aware of this fact and attempted to conceal Christy's status from the public and from Christy himself. To constitute a *Brady* violation, the prosecution or others acting on behalf of the prosecution must have suppressed the evidence at issue. Christy has not offered any indicia that such evidence does, or even may, exist. Thus, Christy's argument that the Government failed to provide him with *Brady/Gigilo* material demonstrating his employment with the U.S. Marshal's service in 2018 must be rejected.

### *C. Ground Three*

Ground Three of Christy's habeas motion asserts a "Conspiracy Against Rights 18 USC 241 violations against Defendant per non-disclosure of law enforcement witness Trp Eckert." (Doc. 422, at 6). Although unclear, it appears that the first basis for Ground Three is that Nicole Eckert, who Christy called as a witness in his defense at trial (*see* Trial Tr., Nov. 22, 2019, at 129-134), was allegedly an undercover police officer/trooper at some unknown time, information that was not disclosed to Christy.[3] Christy's second allegation

[3] At trial, Christy explained that due to his incarceration and *pro se* status, Jessica Eckert had aided him in preparing for trial and specifically that he was calling Ms. Eckert to testify that:

asserts that his stand-by counsel was provided a plea agreement by the Government but only disclosed the plea agreement to Eckert and not to Defendant himself. (Doc. 422, at 6-8). Christy claims that he did not raise this issue on direct appeal because the "Brady material was not made available to defendant in either federal or state spheres". (Doc. 422, at 7).

Christy's contention that Eckert is/was a law enforcement officer is without any evidentiary support. In support of his argument, Christy submits "photographs of Pennsylvania State Police Trooper Jessica Eckert, from an ABC World News broadcast on 04/14/2025" wherein he claims that "her name tag can clearly be seen to read ECKERT when viewed in higher resolution." (Doc. 422, at 6). As noted by the Government, the photographs submitted by Christy are xerox copies "where no person in the photo can be identified." (Doc. 432, at 20). However, the Court has nonetheless reviewed the ABC World News broadcast from April 14, 2025, specifically the news segment addressing the arson at Governor Josh Shapiro's home, and can confirm that although the xerox photos submitted by Christy may be taken from that broadcast, there is only one female trooper seen walking, in passing, in the news segment and her name tag is not visible at any time.

---

> her main dealings with law enforcement were with FBI Agent Eddie Garcia, as well as Deputy U.S. Marshal Pennsylvania State Police Trooper Bobby Lenahan. Her dealings with them were in reference to mail that was seized by the Marshals, in regards to this case, which I feel was not seized legally. And she, also, dealt with Agent Garcia in an investigative capacity, relating to him details of my case, details which have been brought up in the original post on this case, which are kind of matters that deal with this case.

(Trial Tr., Nov. 22, 2019, at 65).

Furthermore, Christy's "evidence" that Eckert is a Pennsylvania State Trooper stems only from a video six years after his trial in 2019. Christy does not explain how Eckert's purported (and unsupported) status as a law enforcement officer a number of years following his trial establishes that she was acting in that capacity in 2018 or 2019.

There is also no support for Christy's claim that he was offered a plea agreement by the Government for 3½ years but that his stand-by counsel only communicated this offer to Eckert. Preliminarily, Christy does not provide *any* evidence, nor explain why he believes, (1) that the Government extended him a plea offer, or (2) that the offer was communicated to Eckert. In contrast, in his brief in opposition to the present motion, AUSA Sempa represents that he "handled the Christy case from its inception through trial (along with then-Assistant U.S. Attorney Sean Camoni) . . . [and a]t no time did either I or then-AUSA Camoni make such a plea offer in this case." (Doc. 432). The Government also attached an Affidavit from Attorney David Cherundolo, Christy's stand-by counsel prior to, and at, trial, and through sentencing. Attorney Cherundolo's Affidavit avers that counsel "did not engage in plea negotiations with the Government and never discussed a plea offer or potential plea offer with either Mr. Christy or Jessica Eckert" and that it "was clear from conversations with Mr. Christy that he had no desire to plea[d] guilty to any charges." (Doc. 432-1).

Christy's unsupported allegations set forth in Ground Three are not sufficient to support his motion under § 2255 and therefore provide no basis for relief.

### *D. Ground Four*

Finally, Christy contends that he was "oversentenced" and that his sentence "is illegal under USSG Section 5G1.3(b)". (Doc. 422, at 8). The basis for Christy's argument appears to be that the district court in the Northern District of Ohio, when sentencing Christy in March of 2025, should have deemed the facts underlying his conviction in the Middle District of Pennsylvania as Relevant Conduct and therefore erred in making his sentence in the Northern District of Ohio consecutive, rather than concurrent, to his sentence in the Middle District of Pennsylvania. However, as properly noted by the Government, "this Court in the Middle District of Pennsylvania is not the proper venue in which to challenge his Ohio sentence." (Doc. 432, at 21-22).[4]

## IV. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary

---

[4] Although this Court cannot discern the basis for his appeal, it notes that Christy has a pending appeal in the Sixth Circuit Court of Appeals of his criminal case in the Northern District of Ohio (*see* 6th Cir. C.A. No. 25-3193).

hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at *5 (M.D.Pa. 2022) (internal quotations and citations omitted)).

## V. Certificate of Appealability

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on any of Christy's claims because the Court finds that reasonable jurists would not find this Court's resolution of Christy's constitutional claims debatable or wrong.

## VI. Conclusion

For the afore-stated reasons, the Court will deny Shawn Christy's *pro se* Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 422). A separate Order will follow.

Robert D. Mariani
United States District Judge